### CALANDRA v. LIFE ASS'N OF AMERICA.

(Supreme Court, Appellate Term. November 6, 1903.)

1. INSURANCE—DELIVERY OF POLICY—TIME OF DELIVERY—REASONABLE TIME.
Where a life policy was to be issued and retained by insured "pending the delivery" of an endowment policy, and no time was fixed for such delivery, the presumption is that it was to be within a reasonable time.

2. SAME—ISSUANCE OF POLICY—ULTRA VIRES POLICIES—AGREEMENT TO ISSUE—EFFECT ON ISSUED POLICY.
Where a company has authority to issue a life policy, but has not complied with the law so as to enable it to issue endowment policies, the fact that it exceeds its authority in agreeing to issue at some future time, and in a certain contingency, an endowment policy, does not render a life policy issued pending the delivery of the endowment policy absolutely void.

3. SAME—POLICIES—AGREEMENT TO ISSUE—DEMAND—REASONABLE TIME.
Where an insured accepts a life policy pending the delivery of an endowment policy for which he pays the premium, he has the right to demand the delivery of the endowment policy within a reasonable time.

4. SAME—WHAT IS REASONABLE TIME—QUESTION FOR COURT.
What is a reasonable time within which to deliver a policy of insurance under a contract is, in an action for the rescission of such contract, a question for the trial court.

5. SAME—AGREEMENT TO ISSUE ENDOWMENT POLICY—BREACH—RIGHTS OF INSURED—RECOVERY OF PREMIUMS.
Where an insured accepted a life policy pending the delivery of an endowment policy, for which he paid the full premium, but which the company had at the time no authority to issue, he was entitled, on demand at the expiration of the period for which the premium was paid, to a return of the sum paid in excess of that due upon the life policy, or to a credit thereof on his next year's premium on such policy.

6. SAME—ACTIONS—EVIDENCE—STATEMENT OF INSURANCE COMMISSION.
Expressions of opinion by the superintendent of insurance as to the legal rights of parties, based upon an ex parte statement, contained in a letter to him, are neither a judicial decision nor competent evidence in an action involving such rights.

Appeal from Municipal Court, Borough of Manhattan, Eleventh District.

· Action by Domenico Calandra against the Life Association of America. From a judgment for plaintiff, defendant appeals. Modified.

Argued before FREEDMAN, P. J., and BISCHOFF and BLANCHARD, JJ.

Eugene Van Schaick, for appellant.
Bullowa & Bullowa, for respondent.

FREEDMAN, P. J. The verified complaint in this action sets up that the defendant was a domestic corporation duly authorized to do life insurance upon the co-operative or assessment plan only; that plaintiff's assignor, one McDonough, and defendant, entered into an agreement on or about July 26, 1901, whereby the defendant was to insure the life of McDonough for the sum of $5,000, and issue to him a 20-year endowment policy containing all the nonforfeiture and incontestable features and all guarantied loan values, cash values, and paid-up values that were contained in similar policies issued by the Equitable Life Assurance Society; to be issued and delivered within a reasonable time; to bear date July 26, 1901; to cost McDonough the sum of $231 per year, that being the annual premium upon that class of policy at McDonough's age; "the defendant to deliver to said McDonough a straight life ten-year dividend policy for said sum of $5,000, which said McDonough was to hold pending the delivery of said twenty-year endowment policy only"; that said 10-year policy was duly delivered to plaintiff's assignor, and accepted by him as part of said agreement; that the payment of $231 was made by him to defendant; that said endowment policy was never delivered, nor any portion of the money refunded; that defendant had no right or authority to make such an agreement or issue endowment policies; and that said agreement was illegal and void, and damages claimed in the sum of $231. The complaint also alleged a demand upon and refusal by the defendant to either issue a 20-year endowment policy or refund said $231, and an assignment of the cause of action by McDonough to plaintiff. The answer contained a general denial, and set up affirmative defenses that need not be considered.

The facts are undisputed. On July 23, 1901, McDonough made an application to the defendant for a 20-year endowment policy. On July 25, 1901, the defendant issued the policy described in the complaint as a straight life policy, and at the same time wrote McDonough a letter, of which the following is a copy:

"135 Broadway, New York, July 26, 1901.

"Mr. Henry McDonough—Dear Sir: I beg to advise you that we have issued a policy on your life, No. 401, for $5000, and have taken the twenty year endowment rate, being $231. It is understood that this rate is taken subject to an agreement on the part of the company to change this policy to an endowment policy for twenty years with a twenty year distribution period.

"The endowment policy, when issued by the stock company that we are now in the process of organizing, will contain the usual non-forfeiture and incontestable features of the Equitable Life Assurance Society of the United States and will contain all the guarantied loan values, cash values, and paid up insurance values of that Company, under a like policy, and will bear the date of this policy and mature twenty years from its date."

Then follows a table of guaranties, loan values, and paid-up insurance values referred to. It appears that at this time the defendant was a mutual insurance company authorized by law to do business upon the assessment plan only, and had made application to the superintendent of insurance and received a charter for the incorporation of a stock company bearing the same name, and had two years from August 23, 1901, to complete its stock organization by the full payment of its capital stock and obtain its license to do business as a stock company. The policy and agreement issued to McDonough were received by him on July 26, 1901, and on July 29, 1901, he paid the $231, and received the company's receipt therefor. The premium charged by the defendant upon an ordinary life policy at McDonough's age was the sum of $97. McDonough testified that he repeatedly spoke to one Van Wagoner, the agent who procured the policy, and informed him that the policy was not an endowment policy, and was put off from time to time by the assurance that an endowment policy would soon be issued; but he seems to have taken no active steps directly with the company to repudiate the policy held by him or to obtain an endowment policy until about the time the second premium became due, when he called upon the president of the defendant, and had an interview with him and the treasurer of the company, in which he demanded either the issuance of an endowment policy, or the return of the whole sum paid, or to be credited on his next year's premium with the excess paid above the premium on the life policy. These demands were refused. The defendant had a right to issue the life policy, but up to the time of the trial had not complied with the law so as to enable it to issue endowment policies, and had no authority to insure lives under that form of policy. No motion was made to dismiss the complaint on the ground that the proof did not conform to the pleadings, nor to make the pleadings conform to the proof, and the trial court gave the plaintiff a judgment for the full sum of $231.

The plaintiff claims that the defendant "illegally issued a life policy coupled with an agreement thereafter to issue an endowment policy, which whole transaction was ultra vires and void as to defendant." As we have seen, the complaint avers and the proof shows that the plaintiff's assignor had full knowledge that a life policy was to be issued and retained by him "pending the delivery" of the endowment policy. No time was fixed when said endowment policy was to be delivered, and the law presumes such delivery to be within a reasonable time. The plaintiff's assignor received and retained for nearly one year a valid binding policy in a form which the defendant had a right to issue, and the alleged excessive power applied to a future executory act. That the defendant exceeded its authority in agreeing to issue at some future time and in a certain contingency an endowment policy did not render the issued policy absolutely void. "A contract made by a corporation without legislative sanction, and hence in excess of its powers, but involving no moral turpitude, and offending against no express statute, is not necessarily illegal, although it may be ultra vires." Bath Gas Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664. "The plea of ultra vires, as a general

rule, will not prevail, whether interposed for or against a corporation, where it will not advance justice, but, on the contrary, will accomplish a legal wrong." Whitney Arms Co. v. Barlow, 63 N. Y. 62, 20 Am. Rep. 504. The testimony is clear that the plaintiff's assignor accepted the benefit of the life policy. Had he died during the time it was in force, his beneficiary could have recovered under it. He had a right, however, to demand that the endowment policy which he had paid for be issued to him within a reasonable time, and what was a reasonable time was, under all the circumstances, a question for the court, and which found in favor of the plaintiff on that question. The amount of money paid by plaintiff's assignor in excess of the amount of premium due upon the life policy issued to plaintiff should have been returned or credited to him upon his next year's premium, as requested. Had this request been complied with, the policy would not have lapsed. It was not shown that the plaintiff's assignor had agreed to wait two years from the date of the life policy for the defendant to comply with the statute, and thus be enabled to issue an endowment policy.

The admission in evidence of the correspondence between the insurance department and the defendant should have been excluded. Expressions of opinions by the superintendent of insurance as to the legal rights of parties, based upon an ex parte statement contained in a letter to him, has not as yet reached the dignity of judicial decisions, nor have they been made evidence in a court of law.

The facts shown on the trial and undisputed by the defendant clearly entitle the plaintiff to a judgment for $134, and, unless the plaintiff consents within five days to modify the judgment by reducing the amount of the judgment to the sum of $134 and costs in the court below, a new trial will be granted. If the plaintiff so stipulate, then the judgment, as modified, will be affirmed, without costs to either party of this appeal. All concur.